Mr. Reier is here for the appellant. Mr. Hatzisky is here for the government. Mr. Reier, you may begin when you're ready. May it please the Court, It is a great honor to be before you for the first time in my legal career. Andrew Reier and Jonathan Jordan, on behalf of George Cornea, his wife, Ms. Cornea, is present. I will deal with the two issues requested by the clerk, specifically as to Issue 1. May it please the Court, Should this Honorable Court vacate the ruling of the District Court's order granting reconsideration and remand with directions to adopt Magistrate Lorena Cho's report and recommendation? We hold that they should. Article 113, which manages the treaty between the Hellenic country of Greece and the United States, indicate that a person should be deported or surrendered first while giving them consideration under the statute of limitations. The Greek statutes say that if 20 years have elapsed, they can have another five years under Article 113, and extended five years if Greek authorities, and this I think is the key language, can scrupulously provide with provisions of Articles 156 and 432 of the Greek Penal Code. I think this is really a fascinating issue, and I really enjoyed researching it, because I think at the heart of this matter, under Chapter 156, it cannot be shown that Greece complied scrupulously with Chapters 156 and 432. Chapter 156 relevant language is the entire case. When a defendant cannot be found at his last known address and his current address is unknown, the document shall be served to his spouse or his parents or his parents or his siblings. Then if none of these persons can be found at his place of last residence, then and only then the document shall be served on the mayor. This case involves a homicide from 1994. In 2014, the statute of limitations ran. Mr. Cornea was taken into custody, I believe, in 2018. And the way the government argues this, Your Honor, is that the reason they are entitled to the five-year extension, despite Magistrate Snow's finding, is because they scrupulously complied with it. We would argue they didn't. There is no dispute by the parties to the facts of this case. Isn't this a question for Greek courts to resolve? I mean, it seems to me there's an issue as to whether or not extraterritorial service outside the boundaries of Greece on Cornea's mother, who, as I understand the record, when contacted by Romanian authorities, could only say he left in 1998, 20 years ago, for Miami and this is not his home. Isn't there a question under Greek law as to whether she could properly be served under the Greek statute in a foreign country as his last known address? And what are we doing as federal courts answering what sounds to me like a pretty difficult question of Greek law? Your recitation of the facts, Judge Talman, are correct. The answer I would give you, and that is at the heart of Issue 2 that we were told to brief, and that's specifically, don't we just have to comply with Greece because they want him? And I think, as the animal scientist— Well, don't we have to comply with the extradition request because Greek government officials say they have complied with Greek law? Is that good enough on extradition for a federal court to say, you're not challenging identity and probable cause? We're not. Okay. So the question is, did the district court exceed, or the magistrate judge in this instance, exceed her authority in getting too deeply into the weeds on the interstices of Greek law in trying to answer the question I posed to you as to what the answer is for service of criminal process under Greek statutes? She did not. She, in fact, issued a 26-page detail. Well, I know what she did, but did she exceed her authority under the extradition laws and the treaty in doing so? That's what I'm wrestling with. I appreciate that. My answer would be no. And the reason my answer would be no is short and simple. Courts must look at jurisdiction issues and resolve statute of limitations in black or white manners. It's clear on its face Greece didn't comply. And let me explain how, if I might. Greece didn't comply for the following reasons. If you believe the newly discovered evidence, which came in after Judge Noe's findings, two prosecutors from Greece, for all we know, two prosecutors who botched this in the first place, the same two prosecutors, for all I know, they weren't experts. They were just Greek prosecutors, submitted that, well, this statute only applies in Greece. And that's, therefore, why we should have Mr. Kornia back in Greece. The defense response is pretty simple. I will reread the actual statute that they have to comply with. When a defendant cannot be found at his last known address and his current address is unknown, the document shall be served to his spouse or his parents. Mrs. Kornia was Mr. Kornia's mother. That is his parent. They had her. Rather than just give her the indictment, what they chose to do was have her prepare an affidavit indicating that he was in Miami so they can just give it to their local mayor. Here's the problem with that. This wasn't the first time they went to her. Basically, the only newly discovered evidence were the two prosecutors giving their opinion, which was readily available, by the way, when Judge Snow made her finding, which is what our brief says. But the issue is this. Let's say it is newly discovered evidence. What is it? Oh, it's saying that it only complies to Greece. Okay. Well, under Chapter 156, which according to 113 must be scrupulously complied with, where does it say that this only applies in Greece? I was trying to think what analogy to make, and I apologize for making a risky analogy, but I just heard the word sexual furniture, which is a 51-year-old man I thought I would never hear in my lifetime. That was the first time I heard it today. It's what makes this job great. It is what makes this job great. So let me defer to a juvenile college argument to make my response. Chapter 156 does not contain the language in Greece, but yet my friends, when we would open fortune cookies, would end it by saying in bed. It's almost like reading a fortune cookie and adding the words in Greece. Don't tell me you're scrupulously complying with the statute when you're just saying, you know what, even though we have to scrupulously comply with it and it says in Greece, we're just going to say in Greece. So the new facts, the new evidence that was discovered and readily available in 1999 was the fact that, no, we only do this in Greece. But if that's true, Judge, if that's true, Judge Talman, why go to Romania in the first place? And they didn't just go to Romania for the affidavit. They went to Romania to try to find a fugitive. That's why they went to Romania, because maybe he was living in Romania, but it turned out, no, he was living in Miami. That's right. But let me ask you the mirror hypothetical. Would it be appropriate under this treaty for a Greek court to decide whether or not we had, as a matter of effective service of process, issued a summons on an indictment as opposed to a physical arrest on an American citizen who thereafter fled to Greece and was arrested on a provisional arrest warrant at the request of the American government of the Greek warrant? Would it be appropriate for Greek courts to decide that question in your view of the extradition treaty? I think it would. If we had a statute that said we had to scrupulously comply with it, I think we would be held to the letter of the law. If the statute was ambiguous in the United States, would you still want a Greek court to opine on the scope of service of criminal process? I understand the court's question, but I guess my response would be, as it relates to Chapter 156, when we have to scrupulously comply, it's not ambiguous. And that's the point. And think about what we're asking. I guess my argument would be, as it relates to statute of limitations, it's sort of separate than other issues. Statute of limitations mean that a man cannot be persecuted in perpetuity. I think back to when I was a child and I saw the movie I'm a Prisoner from a Chain Gang about somebody who stole a hamburger from the 1930s and was prosecuted into his 60s and went on to be a lawyer. It's actually based on a true story, and it takes place in Georgia. The point I'm saying is when we're talking about statute of limitations, we're saying there has to be a limit to how long a man can be prosecuted. What new evidence existed from 1999 to 2017? The answer is none. They knew he was in Romania. His last address was in Romania. There is nothing in the statute that says last address in Greece. There's just nothing there. And if you're going to apply a strict scrutiny test, which usually is, to be honest, as a defense attorney, usually hurts a defense attorney when you do a strict scrutiny, I think you have to be held to the same standard, whether it benefits the defense or the state. The problem with your argument is that you're totally ignoring sovereignty and international comity, which is pretty important in the law of extradition and the interpretation of treaties between countries, is it not? It is. But there's additional case law in this. I am not saying that we shouldn't give it respect. I'm merely saying that you can give it respect without being a rubber stamp. And I think that's what the case law supplies. I think that's what animal science says. And Arthur V. King cited an argument. Well, animal science, it seems to me, is different because in that case, the evidence was offered by a Chinese minister in a price-fixing case where the Chinese government might have been implicated in the price-fixing conspiracy and sought to exculpate itself with evidence offered before a federal district court adjudicating a civil price-fixing case. This is a criminal case where we normally rely on the requesting government to assure us that once we've established identity and probable cause that the extradition request is otherwise in conformance with the treaty and with the law of the requesting nation and with our laws where we recognize a reciprocal offense here, homicide. I understand. It's clearly a different case, but the language is strikingly similar. As it relates to foreign law, the Supreme Court last year indicated we are to accord respectful consideration to a foreign government submission, but further held the court was not bound to accord conclusive effect to the foreign government's statements. I can certainly understand it in the context of a price-fixing conspiracy where the Chinese government may be the unindicted co-conspirator in the case, but this is an extradition matter. To me, that is a very different animal from what was, no pun intended, than was before the Supreme Court in that particular case. But, Your Honor, if we are to read this to the letter of the law, there's no special finding we're supposed to make for murder suspects. I agree this is a serious case. I agree he's charged with murder. I agree the facts of the murder are terrible. The question that I have is where, under a strict reading on the statute, under the treaties, under the Pan-Hellenic Code, is there any language that specifically says, but this doesn't apply to murder cases? Well, this might be a better question for your opponent, but suppose that the statute simply said that the statute of limitation for murder is 20 years, and we would simply look at the calendar and say they arrested him in 2017, they were too late, he's clearly outside the statute of limitations, we're not going to honor the extradition request. But here, notwithstanding your argument, there's an ambiguity as to whether or not the statute of limitations is run. And the question is, should a United States District Court, or now a United States Court of Appeals, decide that question under Greek law, or should we accord comity and respect the sovereignty of Greek courts to resolve that question of legal interpretation under Greek law? Can I give the flip side to that argument? I'd like an answer to the question before you do. Yes, I think we can give comity to Greece, I think we can show respectful deference to Greece, and we can still rule against them and consider them our friend. And the reason for that is simple. Merely giving the statements of two prosecutors who are not experts, merely two prosecutors from Greece, saying this only applies to Greek law, and therefore you should give us Mr. Cornea, is not enough. It's not a Greek judge. It's not a Greek legal opinion. It's just two guys who are prosecutors in Greece. The newly discovered evidence in this case? You say that. I mean, would you have us require that if there is such an official, the Attorney General of Greece, file an affidavit saying we've complied with the law? Is that what you want? I mean, as I understand extradition matters, and I haven't had a lot of them in my career, but I've had a few, you know, these things are very formal requests that begin with the service of a diplomatic note on the State Department, usually the ambassador in Greece, asking for the issuance of a provisional arrest warrant and invoking the provisions of the extradition treaty. And, you know, so I don't know who these people are. I mean, maybe they're high-ranking officials in the Ministry of Justice if there is such a department in Greece. Well, I guess my answer would be they knew in 2013 when they had his mother do the affidavit that he was in Miami. He had a legal resident green card. He had a driver's license. What efforts did they make? The answer is none. So it's not just that they used up the full 20 years. It's that this July they will have used up the additional five years. That's why this Court was so generous in expediting their time. I see that I'm out of time if I could just have 30 more seconds. And I guess in my 30 more seconds what I would say, that the additional five years on top of the 20 years are only valid where the Greek prosecuting authorities have scrupulously complied with the provisions of 156 and 432. Their testimony was available before Judge Snow ruled. The government did not submit it. I mean, Greece sat on this for years. I don't know why, but that has to be considered. And Greece was behind in locating the defendant, serving the defendant, and getting the district court sufficient evidence, and they exceeded their time. Thank you. Let me ask you another question before you sit down. In addition to the deference that we owe Greek authorities, isn't the burden on the petitioner to show that habeas relief should be granted? The burden isn't on the government, is it? The burden is on the petitioner. I agree. But ponderance of the evidence would be the standard, and I think you satisfied that. One more question, if I may. Do you have any authority that says the animal science rule applies in what we all seem to agree is the unique context of extradition? Off the top of my head, no. I'm merely using controlling language from the Supreme Court within the past 12 months as it refers to deference to other nations, Your Honor. Ms. Hatzisky. Good morning, Your Honors. Good morning. May it please the Court. Rebecca Hatzisky for the United States. Your Honors, the district court correctly granted reconsideration and denied habeas based on the unequivocal statements of the Greek government that the relevant Greek statute of limitations has not expired. In this appeal, Mr. Corneas seeks to avoid not U.S. criminal charges, but rather extradition to face a charge of murder in Greece. And it is in that country that he may and most probably would raise his statute of limitations argument, as Judge Talman noted. His extradition was lawfully certified pursuant to 18 U.S.C. Section 3184. The district court reviewed that certification and rejected the exact two arguments that Mr. Corneas has raised here. First . . . The district judge can't just use Rule 59 to change her mind, can she? She has to find that there's new evidence and that there was a lack of diligence on the part of the Greek government or the United States in determining this new evidence, right? There's a difference between the two. Well, under this Court's opinion in Arthur v. King, the standard for granting a motion for reconsideration under Rule 59E is based on either newly discovered evidence or manifest error of law in fact. And here, the district court did determine that the evidence supporting the motion for reconsideration was based on new evidence. She found that based upon that evidence, the statute of limitations in Greece has not expired. Now, Mr. Corneas himself has conceded that at least one of the statements provided by the Greek government in support of the motion for reconsideration was new, and that was a statement which stated for the first time in the litigation that Article 156 of the Greek Code of Criminal Procedure does not apply extraterritorially. Well, as far as the diligence requirement is concerned, the government didn't, based on this record, the government didn't do anything until the habeas petition was granted, right? No, Your Honor, that's not correct. Tell us in the record what the government did and convince us that the government didn't drag its feet with regard to finding this new evidence. Your Honor, the government requested Greece's assistance in responding to Mr. Corneas' statute of limitations claim throughout the litigation. The first point at which it submitted evidence from the Greek government was attached to its reply memorandum in the extradition proceeding. It also attached evidence from the Greek government when it filed objections to the initial decision of the habeas court when it initially decided to grant habeas. And then it also followed up again with additional evidence in support of its motion for reconsideration. Now, the fact that Greece previously had some of the documents and that perhaps it could have provided the statements provided in support of the motion for reconsideration later does not mean that that evidence was in the possession of the United States earlier. And the reason for that is that the United States has no mechanism by which it could compel the Greek government to provide its evidence sooner. It looked to me from the record that the information that was obtained from Greece on September the 19th was requested the day before by the U.S. government. Do you disagree with that? I don't, Your Honor. All right. So I'm just wondering if they could get it in one day at that point in time, why they couldn't have gotten, I'm not talking about statute of limitations generally, but the specific information about the surface of process earlier. Your Honor, the most the government can do is ask. As I said, there's no formal mechanism by which we can require Greece to provide documents and no mechanism by which we can require them to provide it within a certain time. We certainly informed Greece as to the timing with respect to the litigation and asked that they provide information as soon as possible. And are those contacts in the record? They are not, Your Honor. The treaty in this case does not even require that the requesting country provide even the statutes regarding its statute of limitations here. So here the evidence that the United States was asking Greeks to provide was well above what is even required in the treaty. What do you say about counsel's argument that they actually just read Article 156 differently with regard to whether it only applies in the case of documents being served in Greece?  Your Honor, when there are two conflicting interpretations that bear on the interpretation of a treaty, the Supreme Court in Factor v. Laubenheimer says that this court is bound to construe that ambiguity in favor of granting extradition. Now here I would also submit that there is not an ambiguity with respect to Article 156, but rather that statute is plain on its face in authorizing service on the mayor in this case. That statute provides that if none of the relatives identified in the article is, quote, found at the residence of the defendant, then service shall be effected on the mayor of the defendant's former residence. Under a plain reading of those words here, neither Mr. Corneille's mother nor any of his other relatives was found at his residence at the time that service was to be effected. Therefore, under the plain language of Article 156, service should have been effected as it was on the mayor, and the statute of limitations was properly told on that basis. And moreover, a Greek court, based on that service, what it deemed to be legal service, has in fact suspended the statute of limitations in Greece. Mr. Corneille has not challenged that order in Greece. That order has not been invalidated. So while there may be an argument over the interpretation by a U.S. court as to Greek law in Greece, the statute of limitations has in fact been suspended. Let me ask you a question. I want to probe this idea of deference to the Greeks' determination of their own law. And I'm going to ask you a hypothetical. What if the statement from the Greek authorities had said only that the statute of limitations in Mr. Corneille's case is extended to 25 years? Would United States courts be obligated to accept that statement as conclusive of whether the treaty requirement has been satisfied? No, Your Honor, and here the government is only arguing for great deference. And the reason for that is that the foreign government must do more than just simply make a bald assertion, but it must provide some justification that is not clearly unreasonable. And that's what the Greek government has done here. It has not simply said our statute of limitations is 25 years. It has provided the Greek statutes that provide a basis for establishing that 25 years. It's provided the Greek court order, which has in fact extended the statute of limitations to 25 years. And it's provided its interpretation of that law, explaining its justification for why, in its view, the statute of limitations is 25 years. This is a slightly different topic, but I found in the record a letter dated July 26, 2018, from the Hellenic Republic Ministry of Justice, Transparency, and Human Rights. And that letter, it's very brief, but it says the mother was not served with the November 2013 decree because the expedited person is not staying in Romania at his mother's address, so his mother was not a cohabitant. Do you think that that letter is sufficient to – should have been sufficient to satisfy the United States court? Well, that letter, in conjunction with all the other evidence that was in the record at the time, was sufficient, yes. That letter explains how Article 156, under its plain language, did not require service to have been effected on Mr. Cornea's mother because she was not found at his residence at the time. And this letter accompanies the initial statement provided in the extradition request, stating that the statute of limitations is 25 years, along with the statutes provided by the Greek government establishing that statute of limitations, as well as the Greek court order. Is that ministry the organization that's authorized to make such an interpretation of law? Yes, the Ministry of Justice in Greece is the agency of Greece tasked with interpreting its law. And under the treaty itself, supplements to extradition requests are passed directly from the Ministry of Justice to the Department of Justice, as was done in this case. Therefore, this is an official statement provided by the Greek government to the United States. And that preceded the district court's ruling on the motion for reconsideration, right? Correct. That accompanied the government's objections to the initial habeas determination. Which establishes the manifest error of law. Is that correct? That's right, Your Honor. These documents provided by Greece established that the statute of limitations in Greece had not expired at that time, particularly when viewed with great deference, as there has been a long judicial tradition of doing. There are a trio of century-old Supreme Court cases that dictate the approach a court in extradition proceedings should take when confronted with an issue of foreign law. First, there is the case of Grin v. Shine, where the Supreme Court stated that a U.S. court need not be conversant in foreign criminal law. Second, in Bingham v. Bradley, the Supreme Court stated that objections that savor of technicality do not present a reason to deny extradition. And finally, as I mentioned, there's the Factor case, saying that extradition treaties must be construed liberally in favor of extradition. And based on these cases, U.S. courts have historically declined to opine on issues of foreign law. And indeed, the government's aware of no circuit court case in which the court has rejected a foreign government's interpretation of its own law in an extradition proceeding. Well, I think we all agree that there's a certain amount of deference that's owed to the Greek government in interpreting Greek law. But what do you have to say about Mr. Wright's contention that there's a role for the habeas court to play, right? I mean, the habeas court is not a rubber stamp. I would agree, Your Honor. I would agree, but – The judge just can't change her mind here. Well, certainly when there's a manifest error earlier in the proceeding, I would submit that the judge should change her mind and reach the correct answer. She can't change her mind and comply with Rule 59, though. But she could change her mind based on newly discovered evidence and then correct an earlier decision that she had made. As long as it's newly discovered and as long as the government was diligent in obtaining the newly discovered evidence, right? Right. If the evidence could not have been obtained sooner, which the government would submit that here, it could not have obtained this evidence sooner, and indeed it tried to. And the record reflects the evidence that the government was able to obtain at that time. If the court has no further questions, I would ask that you affirm the decision of the district court. And I would respectfully remind the court that the case has been expedited in light of the expiration of the Greek statute of limitations in less than three months than now. And if the court is inclined to rule in the government's favor, I would ask that you issue the mandate forthwith or lift the stay of extradition that's currently in place. Thank you, Your Honors. Thank you. Counsel? I'd like to pick up on something that you said, Judge Wilson. They did not get that language until after Judge Snow ruled and after the trial court ratified Judge Snow's ruling. The trial court adopted the findings of Magistrate Snow, which is, I think, important because it was 26 pages. And the eventual ruling after this prosecutor flew down to Miami and explained about the political consequences of ruling against Greece when the trial court changed their ruling was two paragraphs. Two paragraphs changed their original adaptation of the 26-page finding. And at no point was it ever made clear by the district trial court that Magistrate Snow's findings were erroneous. They just reversed it based on the newly discovered evidence. And the newly discovered evidence was not experts. It was just two statements from two prosecutors in Greece. And as Your Honor points out, yes, it is important to be deferential. It is important to show respect and give comedy to other countries the same way we would like it. But it's also important not to be a rubber stamp. And that is why it is an honor to appear in front of a court where political considerations do not play a part. It's just the law. Well, they do, though, when the State Department decides whether or not it will honor the extradition request. Just because a federal court orders a defendant extradited, the ultimate decision is up to the Secretary of State, is it not? I see that my time is up, but I would simply say this to Your Honor. Certainly, there was nothing preventing the Secretary of State or the Department of Justice for providing this evidence prior to Magistrate Snow making her finding, prior to the trial court making their finding. And there was nothing preventing the Hellenic Republic from going to the United States when they became aware in 2014. 2014, five years ago. Exactly. Not just the nation where Mr. Cornea was, not just the state, but the city. And anybody could get on Google and find out his permanent residence, his Sunbiz Corporation, where he incorporated, under the same name. They chose not to, and they should not be rewarded for that. So are you arguing that we should inject some sort of an estoppel notion in extradition requests if we don't think that the requesting nation has moved quickly enough in its homicide investigation? Not at all. I'm simply asking that the letter of the law, which as a defense attorney, I've had that argument made to me for 26 years, be given in this case to the government the same way it's given to the defense. Under the letter of the law, there is to be no interpretation. I think Judge Wilson said it best. They can't just change their mind based on Rule 59. They can if the initial ruling was manifest error of law. And we would submit it was not. All right. Thank you, Your Honor. Judge Wilson just asked the question. It was a great question, though. Court is in recess until 9 o'clock tomorrow morning. All rise. Thank you.